COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Frank


TERESA LEWIS

                                        MEMORANDUM OPINION*
v.    Record No. 1121-99-2                  PER CURIAM
                                         NOVEMBER 30, 1999
FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES


           FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                     John W. Scott, Jr., Judge

              (John C. Harris; J. C. Harris Law Office, on
              brief), for appellant.

              (Timothy W. Barbrow; Joseph A. Vance, IV;
              Joseph A. Vance, IV & Associates, on brief),
              for appellee.


     Teresa Lewis (Lewis) appeals the decision of the circuit

court terminating her parental rights to her three children,

Antonio Lewis, Shakela Lewis, and Ervin Lewis.  Lewis contends

that the Fredericksburg Department of Social Services (DSS) failed

to prove by clear and convincing evidence that Lewis is not

reasonably likely to correct or eliminate the conditions that

resulted in the abuse of her children so as to allow their safe

return to her.  Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit.

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

"The preservation of the family, and in particular the parent-child relationship, is an important goal for not only the parents but also government itself." Weaver v. Roanoke Dep't of Human Resources, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980). "When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). On appeal, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. at 329, 387 S.E.2d at 796. We view the decision in the light most favorable to DSS as the party prevailing below, and its evidence is afforded all reasonable inferences fairly deducible therefrom. See Logan, 13 Va. App. at 128, 409 S.E.2d at 463. The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed

- 2 -

on appeal unless plainly wrong or without evidence to support it."  Id. (citation omitted).

The children were removed from Lewis' custody in September 1996, after the behavior of the youngest child raised concerns that he had been sexually abused.  Further investigation demonstrated that both Ervin and Shakela showed physical, emotional, and behavioral indications of long term sexual abuse.  Lewis' brother and his girlfriend lived with the family at the time the children were removed, and some evidence indicated that the brother sexually abused the children.  However, the perpetrator was never identified.  Evidence also established that the brother was physically abusive to Antonio.  All three children were found to be neglected and abused, as they were also subjected to physical abuse and neglect.  The finding of abuse suffered by the children was not contested.

Under Code § 16.1-283(B), the parental rights of parents of abused children may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the children and that:

> 1.  The neglect or abuse suffered by such [children] presented a serious and substantial threat to [their] life, health or development; and
> 2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the [children's] safe return to [their] parent or parents

> within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the [children's] initial placement in foster care.

Code § 16.1-283(B)(1) and (2). Proof that "[t]he parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse" is prima facie evidence of the conditions set out in Code § 16.1-283(B)(2).

The record demonstrates that the children had special needs due to their history of abuse. They required a highly structured environment and cooperation among their counselors, caregivers, and teachers. Their counselor, Mary Elizabeth McGhee, testified that she was concerned for their welfare if they were in an environment of inadequate supervision or structure.

The goal of the initial foster care plan was to return the children to the parents. Under that plan, Lewis was required to take several classes, including one focusing on parenting skills and one on the traumatic effects of sexual abuse on children; to undergo a psychological evaluation and individual counseling; to

- 4 -

obtain full-time employment; and to locate and maintain independent housing, particularly ensuring the children's safety by removing other adults from the home.

Georgette Cromartie was a parent education coordinator who taught the parenting skills class that Lewis took. Cromartie expressed concern that Lewis failed to implement the information she received in the classes. Lewis also failed to recognize her need to adequately supervise and protect the children. Cromartie expressed particular concern that Timothy Baker, the children's father, and Lewis continued to live with other adults, including people whom they did not know. She testified also that the children had heightened needs because of their abuse and required a greater amount of supervision. It was crucial that the children have a safe and stable environment.

Dr. Susan Rosebro conducted two parent competency evaluations of Lewis, one in March 1998 and one in September 1998. The re-evaluation was done after Lewis completed both the parenting and the sexual abuse classes and participated in individual counseling. Rosebro noted that, despite the instruction Lewis had received, she failed to respond appropriately when asked what behavior might indicate a child was sexually abused. Rosebro also observed that, when Lewis discussed with the children the sexual abuse that had occurred, Lewis minimized what had occurred, rephrased the children's

complaint, and failed to acknowledge any responsibility for not protecting the children. Rosebro subsequently discussed with Lewis the significance of what the children had reported, and urged Lewis to call her DSS social worker immediately. Lewis expressed no urgency to speak with her social worker, and, in fact, failed to call or appear at her appointment the following week. Rosebro also noted that, while Lewis played well with the children, she failed to set limits on their behavior. Rosebro also met with the children, who expressed concern about Lewis' ability to protect them.

The goal of the foster care plan was changed to adoption in February 1998. Baker and Lewis were evicted in September 1998 for nonpayment of rent. At the time they were evicted, they were residing with people they did not know. By the February 1999 hearing, Lewis testified that she and Baker rented a bedroom in the house of an older woman and her thirty-nine-year-old godson. Lewis admitted she did not know the godson. Lewis testified that she would find a new place to live with her children if they were returned to her custody.

Lewis participated in the classes and counseling required under the foster care plans. Despite receiving training and counseling, however, Lewis failed to respond in a meaningful way to the underlying problem of the children's sexual abuse or to implement the training she received so as to ensure the safety

of her children if they were returned to her custody. Therefore, evidence in the record supports the finding of the trial court that DSS proved by clear and convincing evidence that it was not reasonably likely that the conditions which resulted in the children's neglect and abuse were substantially corrected or eliminated so as to allow their safe return to Lewis' custody.

Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.